AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Shawneil Mowatt, | ) Case No. 16-6463-Snow |
| Adika Plummer, | ) |
| Theo Irving, and | ) |
| Pete Evans, | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____October 27, 2016_____ in the county of _____Broward_____ in the _____Southern_____ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952 and 963 | Conspired to knowing or intentionally import into the United States from a place outside thereof, a Schedule II controlled substance, that is, 500 grams of cocaine. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

_____Daniel McNamara, Special Agent, DEA_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/28/16__

_____
*Judge's signature*

City and state: _____Ft. Lauderdale, Florida_____

_____Lurana S. Snow, U.S. Magistrate Judge_____
*Printed name and title*

## AFFIDAVIT

Your Affiant, Daniel McNamara, being duly sworn, deposes and states:

1.      I am a Special Agent with the Drug Enforcement Administration (DEA), having been so employed since August 2015. The DEA is a federal law enforcement agency authorized to conduct investigations pertaining to possible criminal violations of the federal narcotics statutes, to include Titles 18 and 21 of the United States Code. As a DEA Special Agent, I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). I am empowered by law to conduct investigations of, and/or to make arrests for, offenses enumerated in Title 21, United States Code, Sections 841 and 952. I have received specialized training on the subject of narcotics trafficking and money laundering from the DEA and have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. I have received specialized training in narcotics investigations and identification as well as the laws pertaining to search and seizure.

2.      The following information is based upon my personal knowledge and information that has been provided to me by other law enforcement officers. Since this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me or other law enforcement officers concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that Shawneil MOWATT, Adika PLUMMER, Theo IRVING and Pete EVANS committed a violations of Title 21, United States Code, Sections 952(a), importation of cocaine; and 963 conspiracy to import cocaine.

3.      On October 24, 2016, agents in the Miami office of the DEA received information

1

from DEA agents in Kingston, Jamaica, regarding a load of narcotics that might be travelling to the United States in the near future. The information provided was that Shawneil MOWATT would be traveling from Georgia to the South Florida area to receive two kilograms of cocaine on or about October 27, 2016. DEA agents in Kingston, Jamaica also provided information that MOWATT was using phone number 770-899-1157 to talk to source of supply for the cocaine in Jamaica.

4.      On October 25, 2016, a DEA Miami TFO obtained a state level tracking warrant from the Miami-Dade Division of the State Attorney's Office for telephone number 770-899-1157. On October 27, 2016, at approximately 6:00 a.m., DEA Miami agents along with Miami-Dade Narcotics detectives began tracking the movements of MOWATT from Georgia to the South Florida area.   At approximately 11:56 a.m., the phone was tracked to the Port of Everglades in the area of the cruise ship terminals. At approximately 12:03 p.m., the phone was tracked to the area of the Ross store located at 1375 SE 17th street, Fort Lauderdale, Florida. Agents observed three (3) males inside of a silver Toyota Camry, bearing Georgia tag CDG4192, later identified as MOWATT, Adkia PLUMMER, and a passenger. The Camry is registered to MOWATT. Shortly thereafter agents observed two (2) males, later identified as Theo IRVING, who was caring a black backpack over to the vehicle, and Pete EVANS. As agents approached the vehicle, agents observed PLUMMER counting a large sum of U.S. currency in the rear passenger seat of the vehicle. Agents also observed IRVING wearing the black backpack over his shoulder. All 5 individuals were subsequently taken into custody.

5.      Inside of the black backpack carried by IRVING, agents located a second identical black backpack inside of the first backpack. Agents discovered the two empty backpacks were considerably heavier than they should be when empty. After further inspection,

2

agents cut into the lining of both backpacks and discovered identical packages of a white powdery substance wrapped in foam. A narcotics detecting K-9 conducted a sniff of the backpacks and gave a positive alert to the odor of narcotics. The two white packages weighed a total of 2.89 kilograms and field tested positive for the presence of cocaine. Furthermore, agents observed in plain view large amounts of U.S. currency tossed throughout the rear passenger seats of the vehicle. Agents also located several cell phones throughout the vehicle that were seized as evidence.

6. Agents transported the individuals back to the Miami Field Division where each individual was administratively processed and interviewed. EVANS was read his *Miranda* rights and agreed to answer questions while being audio and video recorded. EVANS stated during the interview, that he is currently employed as a cook on a Celebrity Infinity cruise ship. EVANS stated that he was offered a job by PLUMMER to carry a backpack on and off the cruise ship for $5,000. EVANS stated that he was aware there was cocaine in the backpack. When asked where the backpacks had come from, EVANS stated Panama. EVANS then said he kept the backpack in his room until carrying it off the cruise ship at the Port of Everglades in Fort Lauderdale, Florida. After disembarking the ship, EVANS observed IRVING outside the ship carrying an identical backpack. EVANS stated that he and IRVING took a shuttle to the Ross store. While on the way to the Ross store, EVANS said IRVING took his backpack from him and placed it inside IRVING's backpack. EVANS said he and IRVING then arrived in the area of the Ross store and met with PLUMMER and two other males in a vehicle. EVANS also stated he was told that he would be paid once they had returned to the cruise ship.

7. IRVING was read his *Miranda* rights and agreed to answer questions while being audio and video recorded. IRVING stated that PLUMMER came to him with a job involving

3

carrying a backpack and would be paid $3,000. IRVING stated that he received the backpack from PLUMMER in PANAMA while off the cruise ship. IRVING stated that he and EVANS met with PLUMMER at a McDonalds in Panama and that PLUMMER told them to wait there while he retrieved the bags from another unknown individual. IRVING stated that he carried one backpack back onto the cruises ship and EVANS carried a second backpack onto the cruise ship. IRVING said that when he departed the cruise ship in Fort Lauderdale, EVANS asked him to carry his backpack. IRVING further explained that when he arrived at the Ross store, he saw PLUMMER get out and stand next to a vehicle in the parking lot and wave him and EVANS over to the vehicle.

8.      PLUMMER was read his *Miranda* rights and agreed to answer questions while being audio and video recorded. PLUMMER stated that he was recruited by "DAPZ", a Jamaican male residing in Jamaica, to do jobs for "DAPZ". PLUMMER explained that he was directed by "DAPZ" to pick up the backpacks in Panama and "DAPZ" provided PLUMMER with a telephone number of the individual who would provide the backpacks. PLUMMER said that he received the two backpacks in PANAMA at a McDonalds and then gave them to EVANS and IRVING to carry back onto the cruise ship. PLUMMER stated that he knew something was inside the backpacks. PLUMMER said that when he arrived in Fort Lauderdale, he was picked up by MOWATT, who PLUMMER knew from Jamaica. PLUMMER stated that they then drove to the Ross store. PLUMMER acknowledged that there was money in the back seat of the vehicle with him.

9.      MOWATT was read his *Miranda* rights and declined to answer questions without an attorney present.

10.      Based on the foregoing, I submit there is probable cause to believe that Shawneil

4

MOWATT, Adika PLUMMER, Theo IRVING and Pete EVANS committed a violation of Title

21, United States Code, Sections 952(a), importation of cocaine; and 963 conspiracy to import

cocaine.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____

Daniel McNamara, Special Agent
Drug Enforcement Administration

Sworn and subscribed to before
me this 28th day of October, 2016.

_____

HONORABLE LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE